RICKEY A. SWAIM v. ELMER LARRY SIMPSON AND WIFE, JOAN K. SIMPSON

No. COA94-1205

(Filed 21 November 1995)

**Easements § 10 (NCI4th)— ingress and egress—expansion to allow for installation of utilities—error**

The trial court erred in expanding an easement for ingress and egress to include the location, installation, and maintenance of facilities for domestic utilities.

**Am Jur 2d, Easements and Licenses § 81.**

**Correlative rights of dominant and servient owners in right of way for electric lines. 6 ALR2d 205.**

**Extent and reasonableness of use of private way in exercise of easement granted in general terms. 3 ALR3d 1256.**

Judge JOHNSON dissenting.

Appeal by defendants from order entered 29 August 1994 by Judge Samuel L. Osborne in Yadkin County District Court. Heard in the Court of Appeals 21 August 1995.

Plaintiff filed this declaratory judgment action after defendants refused to allow the installation of underground utility and telephone lines on plaintiff's easement which runs across their property. Defendants acknowledged the existence of the easement, but maintained that it was limited to ingress and egress. The trial court granted summary judgment for plaintiff and stated that "the easement . . . is hereby declared to include the right to locate, install and maintain all facilities for the provision of domestic utilities in furtherance of plaintiff's use of his property for residential purposes." Defendants appeal.

*Morrow, Alexander, Tash & Long, by C. R. "Skip" Long, Jr., for defendant appellants.*

*Shore Hudspeth & Harding, P.A., by N. Lawrence Hudspeth, III, and Douglas P. Mayo, for plaintiff appellee.*

ARNOLD, Chief Judge.

Defendants argue that the trial court erred by increasing the extent and scope of the easement. They maintain that "[n]o language

exists in any of the deeds of record which suggest that the scope of easement was anything other than an access easement to and from the state road." Conversely, plaintiff argues that the grantors clearly "intended to provide the owners . . . with an easement sufficient to maintain a residence, which would logically include access <u>and</u> utilities."

The purpose of an easement "should be set forth precisely." I Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina* § 15-9 (4th ed. 1994). When the scope and extent of an easement is in debate, the following rules apply:

> First, the scope of an express easement is controlled by the terms of the conveyance if the conveyance is precise as to this issue. Second, if the conveyance speaks to the scope of the easement in less than precise terms (i.e., it is ambiguous), the scope may be determined by reference to the attendant circumstances, the situation of the parties, and by the acts of the parties in the use of the easement immediately following the grant. Third, if the conveyance is silent as to the scope of the easement, extrinsic evidence is inadmissible as to the scope or extent of the easement. However, in this latter situation, a reasonable use is implied.

*Id.* at § 15-21; *see also Williams v. Abernethy*, 102 N.C. App. 462, 464-65, 402 S.E.2d 438, 440 (1991) (stating that "[w]hen an easement is created by an express conveyance and the conveyance is 'perfectly precise' as to the extent of the easement, the terms of the conveyance control").

Here, plaintiff was granted an express easement over Lot Six. The grant states that "[a]lso conveyed herewith is an easement of right of way for ingress and egress to the above described tract to N. C. S. R. #1146, and which easement is more fully described in that conveyance recorded in Book 233, page 210 . . . on April 30, 1982." The easement, in Book 233, page 210, is described as "providing access of ingress and egress to and from" plaintiff's lots.

Generally, "once an easement has been established, the easement holder must not change the use for which the easement was created so as to increase the burden of the servient tract." *Webster's, supra,* § 15-21 (italics omitted). In construing the easement to provide for the location, installation, and maintenance of facilities for domestic utilities, the trial court increased the use of the easement and the burden on the servient estate. Had the grantors intended a greater use, such

use should have been specified. *See Weyerhaeuser Co. v. Light Co.,* 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962) (stating that "[w]hen the language . . . is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit"). Because the deed identified the easement as one for ingress and egress, the trial court erred in expanding its use.

The trial court's order is reversed and this case is remanded for entry of summary judgment for defendants.

Reversed and remanded.

Judge MARTIN, Mark D., concurs.

Judge JOHNSON dissents with a separate opinion.

Judge JOHNSON dissenting.

I respectfully dissent from the majority's opinion in which they contend that a burden would be placed upon the servient estate by providing domestic utilities. This Court has previously held that a buried septic tank system does not constitute an encumbrance on the property of another; accordingly, the installation of underground utility lines would not increase the burden on the servient estate, nor the use of the easement. *See Commonwealth Land Title Ins. Co. v. Stephenson,* 101 N.C. App. 379, 399 S.E.2d 380 (1991).

Moreover, employing the principles of ordinary reasoning and common sense leads one to conclude that a deed, which included an easement restricting a lot to residential use sufficient to maintain a residence, would necessarily provide the right to install utilities to the residential lot. In *Sparrow v. Tobacco Co.,* 232 N.C. 589, 61 S.E.2d 700 (1950), the Court held that, when determining what uses of an easement are reasonably necessary, consideration must be given to the purposes or uses for which the easement was granted. It would be reasonably necessary that an easement for residential use include, not only the right to ingress and egress, but also the right to lay utility lines. Any other conclusion would render the lot restricted for residential use basically uninhabitable.

I therefore vote to affirm the trial court's judgment.